FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2014 SEP 12  P 2: 38

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

**Ken Cuccinelli for Governor, Inc.,** and
**Kenneth Cuccinelli, II,**

Plaintiffs,

v.

**Conservative StrikeForce PAC; Strategic
Campaign Group, Inc.; Mackenzie &
Company; Dennis Whitfield; Scott
Mackenzie; Kelley Rogers;** and **Chip O'Neil,**

Defendants.

Case 1:14-cv-1215-LO-TCB

Jury Demanded

## COMPLAINT

1.     Over a period of several months leading up to the Virginia gubernatorial election

on November 5, 2013, the Defendants in this case engaged in a national fundraising scam aimed

at small donors supportive of Ken Cuccinelli's campaign.  In this scheme, Defendants explicitly

promised donors that all money donated in response to Defendants' solicitations would either be

contributed by Defendants directly to the Cuccinelli campaign or spent by Defendants as

independent expenditures in support of the Cuccinelli campaign.  Upon information and belief, a

substantial proportion of the approximately $2.2 million that Defendants raised through political

fundraising in 2013 was directly attributable to solicitations invoking Ken Cuccinelli, as

Virginia's gubernatorial election was the marquee contested race of American politics in 2013.

2.     Defendants, however, have admitted that they did not use the money raised

invoking Ken Cuccinelli to actually aid the Cuccinelli campaign, either through direct

contributions to the campaign or through independent expenditures in support of the campaign,

other than a single $10,000 contribution to the campaign on October 4, 2013—which amounted

to *less than one-half of 1%* of the approximately $2.2 million that Defendants raised in 2013. Instead, upon information and belief, Defendants used the balance of the money so raised to enrich themselves. In short, Defendants' political fundraising in 2013 invoking Ken Cuccinelli was not a means to the legitimate end of supporting the Cuccinelli campaign, but rather was an illegitimate end in itself, with the Virginia gubernatorial election merely serving as "cover" for Defendants to prey on unsuspecting small donors across the country. In addition to being an egregious abuse of the political process, Defendants' malicious "Scam PAC" operation violated the federal Lanham Act, two Virginia statutes, and the common law of Virginia.

**The Parties**

3.      Ken Cuccinelli for Governor, Inc. ("KCG" or the "Cuccinelli campaign"), is a corporation organized under the laws of Virginia. KCG has its principal place of business in Fairfax, Virginia.

4.      Kenneth T. Cuccinelli, II, is a citizen of Virginia and a resident of Prince William County. Mr. Cuccinelli was the Republican Party's candidate in 2013 for the governor of Virginia.

5.      Conservative StrikeForce PAC ("Conservative StrikeForce") is an unincorporated association operated and controlled by Defendants Strategic Campaign Group, Inc., Whitfield, Mackenzie, Rogers, and O'Neil.  Conservative StrikeForce is registered with the Federal Election Commission ("FEC") as a "multi-candidate political committee," commonly known as a political action committee or "PAC." Conservative StrikeForce's FEC identification number is C00457291.

6.      Conservative StrikeForce holds out as its official address a rental mail box (#806) at a UPS Store, 2776 South Arlington Mill Drive, Arlington, Virginia, 22206. Upon information

and belief, Conservative StrikeForce's principal place of business is at the offices of Strategic Campaign Group, Inc., in Arlington, Virginia.

7.    Strategic Campaign Group, Inc., is a corporation organized under the laws of the Virginia. Strategic Campaign Group has its principal place of business in Arlington, Virginia.

8.    Mackenzie & Company is a sole proprietorship operated by Scott Mackenzie in the District of Columbia.

9.    Dennis Whitfield is a citizen of Virginia and a resident of the City of Alexandria. Mr. Whitfield is the chairman of Conservative StrikeForce and senior advisor to Strategic Campaign Group.

10.    Scott B. Mackenzie is a citizen of Virginia and a resident of Arlington County. Mr. Mackenzie is the treasurer of Conservative StrikeForce.  According to Conservative Strike Force's FEC filings, Mr. Mackenzie maintains the books and records of Conservative StrikeForce.

11.    Kelley Rogers is a citizen of Virginia and resident of Arlington County.  Mr. Rogers is the president of Strategic Campaign Group.

12.    Chip O'Neil is a resident and citizen of the District of Columbia. Mr. O'Neil is the vice president of Strategic Campaign Group.

## Jurisdiction and Venue

13.    The Court has subject-matter jurisdiction over Count 1 because it arises under the laws of the United States. 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Counts 2, 3, and 4 because they are sufficiently related to Count 1 that they form part of the same case or controversy under Article III of the U.S. Constitution. 28 U.S.C. § 1367(a).

14.    The Court has personal jurisdiction over Conservative StrikeForce because it has its principal place of business in Virginia. The Court has personal jurisdiction over Strategic

Campaign Group because it is organized under Virginia law and has its principal place of business in Virginia. The Court has personal jurisdiction over Mackenzie & Company and Mr. O'Neil because they engaged in conduct with Conservative StrikeForce that is related to KCG's and Mr. Cuccinelli's claims and thereby sufficient to make the exercise of jurisdiction appropriate. The Court has personal jurisdiction over Messrs. Whitfield, Rogers, and Mackenzie, because they are citizens of, and reside in, Virginia.

Venue is appropriate in the Court because a substantial portion of the events or omissions giving rise to KCG's and Mr. Cuccinelli's claims occurred in the Alexandria Division of the Eastern District of Virginia. 28 U.S.C. § 1391(b)(2); Local Civil Rule 3(C).

## Factual Allegations

### A.   Defendants' Solicitation Emails Invoking Ken Cuccinelli

15.    Over several months during 2013, Defendants sent numerous emails (collectively, "Solicitation Emails") to national lists of identified conservatives, usually twice weekly and ultimately daily in the campaign's final days, asking for donations to fund "get out the vote" ("GOTV") and other efforts to support Mr. Cuccinelli's campaign for governor of Virginia. Defendants' emails expressly represented that donated funds would be used to fund direct contributions to the Cuccinelli campaign or independent expenditures supporting the campaign in the form of, *inter alia*, "the largest GOTV plan in Virginia history," phone banks, radio ads, direct mail, door-to-door canvassing, poll workers, Election Day drivers, absentee ballot campaigns, voter identification efforts, rallies, and election lawyers.  In all of these emails, Defendants expressly stated that making a donation to Conservative StrikeForce would help elect Mr. Cuccinelli.  The Solicitation Emails include the following representative examples:

16.    On or around July 30, 2013, Defendants sent an email titled **"Ken Cuccinelli is in trouble"** ("7/30 email") from email@conservativeintel.com (an email address controlled by

4

Conservative Intelligence Briefing) to a national email list of identified conservatives.  The 7/30

email urged recipients to give money to Conservative StrikeForce and represented that the

money so donated would be used to help elect Mr. Cuccinelli by funding "phone banks, get-out-

the-vote programs, mailings, rallies - whatever it takes."  The 7/30 email provided, *inter alia*:

> Dear Patriot,
> **Conservative superstar Ken Cuccinelli is in real trouble in his race to be Virginia's governor.**
>
> Money is pouring into his opponent, Terry McAuliffe's campaign at an unbelievable pace. He just unleashed a new negative ad against Ken. **This conservative hero needs your help *NOW*!**
>
> **Please make an urgent contribution of $25, $30, $50, $100, $250, or more to help elect Ken Cuccinelli.**
>
> * * *
>
> **Please, please help Ken by making the most generous contribution you possibly can today.  This is urgent.**
>
> * * *
>
> Without the help of independent conservative groups like **Conservative StrikeForce**, Ken Cuccinelli could be outspent by over two to one by McAuliffe!
>
> * * *
>
> **McAuliffe and his liberal allies have more money for hate ads than they know what to do with.**
>
> **That's why I am begging you to please make your very best donation to Conservative StrikeForce to help elect Ken Cuccinelli today.**
> We **_MUST_** come to Ken's aid if he's going to stand a chance in this race. He's already falling behind, and we have to help him get back in the fight before it's too late.
>
> Ken has no chance without the help of independent grassroots conservative groups. *NONE.*
>
> We must pay for phone banks, get-out-the-vote programs, mailings, rallies - whatever it takes.
>
> **Please donate whatever you can right now. Ken Cuccinelli needs you!**

17.     Contrary to the representation contained in the 7/30 email, Conservative

StrikeForce never paid for any "phone banks, get-out-the-vote programs, mailings, [or] rallies"

to support the Cuccinelli campaign.

18.     On or around September 17, 2013, Defendants sent an email titled "**Ken**

**Cuccinelli's fate is in your hands**" ("9/17 email") from mailing@conservativestrikeforce.com

to a national email list of identified conservatives.  The 9/17 email urged readers to give money

to Conservative StrikeForce and represented that the money would be used to fund a $50,000

"money bomb" to benefit the Cuccinelli campaign.  The 9/17 email provided, *inter alia*:

> Dear Patriot,
>
> We just launched our emergency *Virginia Victory Money Bomb* because Tea
> Party hero Ken Cuccinelli is about six points behind and he's desperately short on
> cash.
>
> **We must raise *$50,000* by October 1st. The media is watching us!**
>
> **Please make an urgent contribution of $25, $30, $50, $100, $250, or more to**
> **this emergency campaign.**
>
> * * *
>
> You see, this race is very, very close.  There is a huge number of undecided voters
> in Virginia.
>
> So *every single dollar* **we can raise to help Ken will make all the difference in**
> **the world.**
>
> He needs a top-notch get-out-the-vote effort.
>
> He needs to identify and target all of the undecided voters in the state.
>
> And he needs to refute all the lies and smears being lobbed at him by the Obama
> liberals.
>
> Please, make the very best contribution you possibly can.

19.     The 9/17 email falsely implied that "every single dollar" raised by Conservative

StrikeForce would be used to "help Ken."

20. On or around September 30, 2013, Defendants sent an email titled "**Help me keep my Cuccinelli promise**" ("9/30 email") from mailing@conservativestrikeforce.com to a national email list of identified conservatives. The 9/30 email again urged recipients to give money to Conservative StrikeForce and represented that the money would be used to fund a $50,000 "money bomb" to benefit Mr. Cuccinelli. The 9/30 email provided, *inter alia*:

> Conservative StrikeForce has promised to raise $50,000 to support Ken Cuccinelli by tomorrow night.
>
> **Unfortunately, unless you make a generous contribution now, we will fall short of that goal.**
>
> **Please make an urgent and generous contribution of $25, $30, $50, $100, $250, or whatever you can afford to our Virginia Victory money bomb.**
>
> **We are almost out of time, and Ken Cuccinelli *really* needs our help.**
>
> * * *
>
> **Now, we are in big trouble. We have only one day left, and we *must* raise $11,595.**
>
> **So, once again, please make the very best donation you can today to help Ken Cuccinelli."**
>
> * * *
>
> **Help me keep my promise. *Help us reach our $50,000 goal by tomorrow!***

21. The 9/30 email falsely implied that the money raised through the "money bomb" campaign would be used to "help" the Cuccinelli campaign. Upon information and belief, little if any of the money raised by Defendants in their "money bomb" campaign was used to "help" the Cuccinelli campaign.

22. On or around October 8, 2013, Defendants sent an email titled "**Cuccinelli is now tied!**" ("10/8 email") from mailing@conservativestrikeforce.com to a national email list of identified conservatives. The 10/8 email provided, *inter alia*:

Ken Cuccinelli has miraculously climbed back from being seven points down. Now if we can just turn out the conservative vote in Virginia, *he will win!*

**Please make an urgent contribution of $25, $30, $50, $100, $250, or more to our emergency Virginia GOTV effort right now.**

\* \* \*

**Please make the best gift you possibly can to help fund this critical get-out-the-vote effort.**

\* \* \*

**If we can simply turn out all the conservative voters in Virginia, *Ken Cuccinelli will win*.**

**So please, please do what you can right now.**

**We are putting together one of the largest GOTV efforts in Virginia history.** Ken has offices and volunteers in every corner of the state. Now all we need is to pay for the massive phone banks, the absentee ballot campaigns, and the massive "knock and drag" effort that will win this.

23.     The 10/8 email's statement—in the present tense—that "[w]e are putting together one of the largest GOTV efforts in Virginia history" was a fraudulent misrepresentation of existing fact, because Defendants have since admitted that they spent no money on independent expenditures of any kind, which necessarily means Defendants made no expenditures for "putting together" the fictitious GOTV plan described in the 10/8 email.

24.     The 10/8 email's statement that Conservative StrikeForce would use the money raised in response to the solicitation to pay for "massive phone banks, . . . absentee ballot campaigns, and [a] massive 'knock and drag' effort'" to "win" the election for KCG was false and misleading, because Defendants used none of the money raised in response to the 10/8 email to pay for such independent expenditures.

25.     On or around October 21, 2013, Defendants sent an email titled "**Help Cuccinelli's GOTV**" ("10/21 email") from mailing@conservativestrikeforce.com to a national email list of identified conservatives. The 10/21 email provided, *inter alia*:

8

_**This is it.**_ **Either we turn out the conservative vote in Virginia and Ken Cuccinelli wins, or we don't and Barack Obama's buddy Terry McAuliffe is elected governor.**

**Please make an urgent contribution of $25, $30, $50, $100, $250, or more to our emergency GOTV effort right now.**

\* \* \*

**Please help Ken Cuccinelli. His GOTV plan must begin in just a few short days. The election is just around the corner!**

\* \* \*

If we can turn out _every true conservative_ in Virginia, Ken Cuccinelli will be the next governor!

So, please, please do what you can right now. His GOTV "ground game" is the key to victory.

We are putting together one of the largest GOTV efforts in Virginia history. Our goal is to turn out each and every conservative voter.

Unfortunately though, grassroots get-out-the-vote campaigns are _ridiculously expensive._

\* \* \*

**Ken needs a massive get-out-the-vote effort to make sure every single conservative gets to the polls.**

He needs phone banks, Election Day drivers and poll workers.

**Donate what you can today. Please, this is very important.**

Thank you in advance for all your help.

26.    The 10/21 email falsely stated that Defendants were "putting together one of the largest GOTV efforts in Virginia history." Defendants did not "put together" _any_ GOTV effort, much less the "largest" such effort "in Virginia history."

27.    The 10/21 email falsely implied that contributions in response to the email would be used to fund "phone banks, Election Day drivers and poll workers."

28.     On or around October 29, 2013, Defendants sent an email titled "**One Week Left**" ("10/29 email") from mailing@conservativestrikeforce.com to a national email list of identified conservatives.  The 10/29 email provided, *inter alia*:

> We have _only_ _one_ _week_ _left_ **to execute the historic get-out-the-vote effort that will elect Ken Cuccinelli in Virginia.**
>
> But we need _your_ help to make it happen!
>
> **Please make your most generous contribution of $25, $30, $50, $100, $250, or whatever you can possibly afford right now to help Ken win this crucial race.**
>
> *If we get out the conservative vote across this crucial swing state, _Ken_ _can_ _win_ _this_ _race!_*
>
> That means _now_ is the time to pound the pavement, my friend. _Now_ is the time to light up the airwaves, launch the mail, and heat up the phone lines.
>
> But we can't do that without your financial support.
>
> **So please, let this rock-solid conservative know you stand with him. Give whatever you can right now.**
>
> * * *
>
> **Your most generous contribution of $25, $35, $50, $100, $250, or more can make a difference in Ken Cuccinelli's campaign _right_ _away_.**
>
> Our online system will process your gift instantly, and your contribution will be put to work immediately to get Virginia conservatives to the polls on Election Day.
>
> So please, my friend, don't wait another minute. Every second counts in this nail-biter of a race.
>
> **Please, click here to make your generous online contribution to help Ken Cuccinelli right now.**

29.     The 10/29 email contained numerous deceptive misrepresentations to induce contributions.  The 10/29 email falsely represented that Defendants had produced a "historic get-out-the-vote effort" which needed funding to be executed.  Defendants created no GOTV program, and upon information and belief, never intended to.

30.     Similarly, the 10/29 email falsely represented that contributions made in response to the email would be used to "pound the pavement," "light up the airwaves, launch the mail, and heat up the phone lines" to support the Cuccinelli campaign.

31.     Similarly, the 10/29 email falsely represented that contributions in response to the email would "be put to work immediately to get Virginia conservatives to the polls on Election Day" to support the Cuccinelli campaign.

32.     Similarly, the 10/29 email falsely represented that contributions in response to the email would "help Ken Cuccinelli right now."

33.     On or around November 4, 2013—the eve of the election—Defendants sent an email titled "**They are trying to steal this election from Ken Cuccinelli**" ("11/4 email") from mailing@conservativestrikeforce.com to a national email list of identified conservatives.  The 11/4 email provided, *inter alia*:

> **The liberal Democrats know they are in deep, deep trouble. So, they are going to try to *steal* this election from Ken Cuccinelli.**
>
> **Please make an urgent contribution of $25, $30, $50, $100, $250, or more to the Virginia Election Day ballot security effort IMMEDIATELY.**
>
> * * *
>
> Democrats in Virginia are in an absolute panic. So, they are preparing to steal this election!
>
> **We need to hire dozens of lawyers for Election Day and we need to do it now.**
>
> **Please make the very best donation you can. This is urgent.**

34.     Defendants admitted failure to spend a single penny on independent expenditures indicates that Defendants never hired any lawyers for the Election Day ballot integrity operations promised in the 11/4 email.  Upon information and belief, Defendants never had any intention or

plan to hire such lawyers.  Instead, the 11/4 email was an intentionally misleading representation designed to induce additional donations to Conservative StrikeForce.

35.     On or around November 6, 2013, Defendants sent an email titled **"Thank You!"** ("11/6 email") from mailing@conservativestrikeforce.com to a national email list of identified conservatives thanking them for supporting Conservative StrikeForce during the Virginia election and seeking additional donations.  The 11/6 email provided, *inter alia*:

> Thank you for your recent support of Conservative StrikeForce as we stood side-by-side with Ken Cuccinelli in Virginia. I want you to know that we did all we could do, fought as hard as we could fight, and left no stone unturned to help Ken.
>
> **With your support, we were able to give _$15,000_ directly to Ken's campaign and invest _tens of thousands more_ in get-out-the-vote work on his behalf.**
>
> * * *
>
> **StrikeForce is a year-round political presence, and if you are in a position to make a contribution now to help us offset our operating expenses that would be much appreciated.**

36.     The 11/6 email contained three fraudulent misrepresentations of existing fact to induce additional donations to Conservative StrikeForce.  First, Conservative StrikeForce did not do all that it could do for the Cuccinelli campaign, as Conservative StrikeForce pocketed most of the money it raised from the Email Solicitations invoking the Cuccinelli campaign.  Second, Conservative StrikeForce did not give $15,000 directly to the Cuccinelli campaign—it only gave $10,000 directly to the Cuccinelli campaign.  Finally, Conservative StrikeForce did not—by its own admission—spend a single penny "in get-out-the-vote work on [Cuccinelli's] behalf."  The 11/6 email's claim that Conservative StrikeForce spent "tens of thousands" to get the vote out for the Cuccinelli campaign was a knowing and flagrant lie.

37.     All of the Solicitation Emails were addressed "Dear Patriot" or "Dear Friend," were written in the first-person singular, and were signed "Dennis Whitfield, Chairman,

Conservative StrikeForce PAC." On information and belief, Mr. Whitfield, along with all of the other Defendants, performed, participated in, or directed the creation, approval, or sending of the Solicitation Emails.

38.     All of the Solicitation Emails also contained contact information for Conservative StrikeForce that identified Mr. Mackenzie as its treasurer. On information and belief, Mr. Mackenzie, along with all of the other Defendants, performed, participated in, or directed the creation, approval, or sending of the Solicitation Emails.

39.     On information and belief, the Solicitation Emails were authored by Defendants or on Defendants' behalf with their knowledge and consent.

40.     On information and belief, Defendants approved, participated in, or directed the sending of the Solicitation Emails.

41.     All or most of the Solicitation Emails used heightened rhetoric to implore the recipients thereof "to Help us ELECT Ken Cuccinelli in Virginia!" by contributing funds to Conservative StrikeForce.

42.     The language of the Solicitation Emails expressly and implicitly informed prospective donors that their contributions to Conservative StrikeForce were being solicited— *and would be used*—for the purpose of aiding and assisting the Cuccinelli campaign.

43.     All of the Solicitation Emails contained and used Mr. Cuccinelli's name.

44.     All of the Solicitation Emails contained and used Mr. Cuccinelli's picture.

45.     Defendants neither sought nor obtained Mr. Cuccinelli's consent to the use of his name or picture in the Solicitation Emails.

46.     All of the Solicitation emails contained the following express representation: *"All contributions will be used by StrikeForce for direct candidate contributions, independent*

13

*expenditures and Get Out The Vote activities* in strict compliance with any and all campaign

finance laws." (emphasis added.)  This express representation was false and misleading.

**B.     Defendants' Contribution Websites**

47.     The Solicitation Emails contained links to "Contribution Websites" that further

implored potential donors to contribute funds to Conservative StrikeForce for the purported

purpose of aiding and assisting the Cuccinelli campaign, and provided an online contribution

form for potential donors to do so using their credit cards.

48.     On information and belief, the Contribution Websites were at all relevant times

controlled and operated on behalf of Defendants.

49.     Defendants did not use the money donated at the Contribution websites to help

Mr. Cuccinelli win the election, but instead diverted nearly all of that money to enrich

themselves.

50.     For all or most of the Solicitation Emails, each one linked to a Contribution

Website located at a unique web address that was specific to that particular Solicitation Email.

51.     Thus, on information and belief, Defendants were and are able to track and

determine which contributions to Conservative StrikeForce resulted from which Solicitation

Email.

52.     Defendants' Contribution Websites can be divided into two categories, the

"Cuccinelli Fund Websites" and the "Virginia Victory Websites."

53.     The Cuccinelli Fund Websites consisted of the Contribution Websites located at

subdirectories of https://secure.giveworks.net/strikeforce/cuccinelli or

https://secure.giveworks.net/m/strikeforce/cuccinelli. Notwithstanding the slight variations in

their web addresses, the Cuccinelli Fund Websites were identical in their text, images, and functionality.

54.     Next to a form for making online contributions by credit card, the Cuccinelli Fund Websites expressly represented to prospective donors that (a) "your most generous contribution today [will] support the candidacy of Ken Cuccinelli for Governor of Virginia," and (b) "*[a]ll money* raised by Conservative StrikeForce's *Cuccinelli Fund* will be spent *on behalf of Ken Cuccinelli* or given *as a direct contribution*" (emphasis added).   The foregoing representations were false and misleading.

55.     On information and belief, Conservative StrikeForce never did have a "Cuccinelli Fund."

56.     The Virginia Victory Websites consisted of the Contribution Websites located at subdirectories of https://secure.giveworks.net/strikeforce/vavictory or https://secure.giveworks.net/m/strikeforce/vavictory. Notwithstanding the slight variations in their web addresses, the Virginia Victory Websites are identical in their text, images, and functionality.

57.     Next to a form for making online contributions by credit card and beneath a picture of Mr. Cuccinelli, the Virginia Victory Websites expressly represented to prospective donors that their contributions would "help" Conservative StrikeForce "turn the tide in this historic battle" between Mr. Cuccinelli and Mr. McAuliffe by "rais[ing] $50,000 *for Ken Cuccinelli* by October 1st" and "send[ing] *him* into the final month of *this campaign* with a full head of steam" (emphasis added).  The foregoing representations were false and misleading.

58.     Defendants neither sought nor obtained Mr. Cuccinelli's consent to the use of his name or picture in the Cuccinelli Fund or Virginia Victory Websites.

**C.    Defendants' Diversion of Contributions Made to Support Ken Cuccinelli**

59.    Defendants' repeated representations to prospective donors that contributions would be used to aid and assist the Cuccinelli campaign were false in that Defendants never intended to, and did not undertake or fund, any independent expenditures on Mr. Cuccinelli's behalf. Defendants never provided *any* of the GOTV activities, phone banks, radio ads, direct mail, door-to-door canvassing, poll workers, Election Day drivers, absentee ballot campaigns, voter identification efforts, rallies, and election lawyers that Defendants' Solicitation Emails promised donors that their contributions would fund.

60.    Defendants' repeated representations to prospective donors that contributions would be used to aid and assist Mr. Cuccinelli in the form of direct contributions to the Cuccinelli campaign were false in that Defendants never intended to, and did not undertake or contribute, any amount other than the $10,000 contributed to the Cuccinelli campaign on October 4, 2013. Upon information and belief, the purpose of that limited contribution—a small fraction of what Defendants raised by invoking the Cuccinelli campaign—was to provide "cover" for Defendants' "Scam PAC" scheme.

61.    On or about July 31, 2013, Defendants filed a report with the FEC covering Conservative StrikeForce's receipts and expenditures in the first half of 2013 (which report was later amended). During the first half of 2013, Conservative Strike Force reported (as amended) raising $871,803.67 in contributions, 81% of which was raised from small donors ($200 or less).

62.    Conservative StrikeForce's FEC report for the first half of 2013 reported *no* candidate contributions of any kind, and $26,975.00 in purported independent expenditures in support of a Louisiana Republican congressional incumbent, Charles Boustany, in a December 2012 runoff election against another Republican congressional incumbent, Jeff Landry. (The two were drawn into the same district when Louisiana lost a congressional seat after the 2010

16

census.) The expenditure was in the form of a January 4, 2013 payment of $26,975.00 to Strategic Campaign Management—which operates and controls Conservative StrikeForce—for purported "GOTV calls" made in 2012 by Strategic Campaign Management in support of Congressman Boustany.

63.     Thus, according to its own FEC report, only 3% of Conservative StrikeForce's $871,803.06 receipts in the first half of 2013 were spent in support of any candidate—and that candidate was a Republican who faced another Republican, and the entity actually paid for the purported expenditures was one of the Defendants that controls Conservative StrikeForce. That is to say, the 3% of their receipts in the first half of 2013 that Defendants purportedly spent in support of a candidate was paid by Defendants *to themselves*.

64.     Conservative StrikeForce made *no* contributions to or independent expenditures in support of Ken Cuccinelli in the first half of 2013.

65.     On or around January 30, 2014, Defendants filed a report with the FEC covering Conservative StrikeForce's receipts and expenditures in the second half of 2013.   During the second half of 2013—when the Virginia gubernatorial election reached its peak—Conservative Strike Force reported raising $1,297,131.26 in contributions, 78% of which was raised from small donors ($200 or less).

66.     Conservative StrikeForce's FEC report for the second half of 2013 reported *no* independent expenditures in support of *any* candidate.  That is to say, Conservative StrikeForce's FEC report for the second half of 2013 constitutes an admission by Defendants that *none* of the independent expenditures in support the Cuccinelli campaign that Defendants promised in their Solicitation Emails—the "largest GOTV program in Virginia history," the absentee balloting campaign, the direct mail campaign, etc.—were actually performed.

67.    Conservative StrikeForce's FEC report for the second half of 2013 reported only $17,000 in candidate contributions: $10,000 to the Cuccinelli campaign on October 4, 2013, and $7000 to two other candidates.

68.    Thus, of Defendant's $1,297,131.36 in total fundraising receipts for the second half of 2013, only $17,0000, or *1.3%* of Defendants' receipts, was spent in support of a total of three candidates, and only $10,000, or *less than 1%,* was spent in support the Cuccinelli campaign.

69.    Upon information and belief, the Cuccinelli campaign was a major component of Defendants' fundraising solicitations in 2013, as the Virginia gubernatorial race was the most prominent contested election in the nation.

70.    Defendants reported raising a total of $2,169,034.93 in 2013, and on information and belief, a substantial proportion of that sum is attributable to solicitations invoking the Cuccinelli campaign.  Defendants donated less than *one-half of one percent* of their total receipts in 2013 to the Cuccinelli campaign, and spent no money in support of the Cuccinelli campaign in the form of independent expenditures.

71.    Counting the money that Defendants paid themselves in connection with purported independent expenditures made in support of the Boustany campaign, Defendants spent a total of 2% of their receipts in 2013 to support candidates.  If Defendants' payments to themselves in connection with Boustany campaign are excluded, Defendants spent less than 1% of their receipts in 2013 to support *any* candidate.

72.    Defendants' false and misleading statements actually deceived, or had the tendency to deceive, a substantial portion of consumers who received the Solicitation Emails or

18

accessed the Contribution Websites into believing that their donations to Defendants would be donated directly to KCG or used to support the efforts of the Cuccinelli campaign.

73.    Defendants' deception was material because it influenced consumers who received the Solicitation Emails or accessed the Contribution Websites to donate to Defendants in the belief that by doing so they were supporting KCG.

74.    On information and belief, the primary purpose of Defendants' solicitations, and Defendants' primary use of the resulting contributions to Conservative StrikeForce, was to enrich Messrs. Whitfield, Mackenzie, Rogers, and O'Neil.

75.    Defendants were unjustly enriched by their deceptive statements and claims. Consumers donated money to Defendants on the mistaken belief that the money would be donated to KCG or used to support Mr. Cuccinelli's campaign.

76.    Conversely, KCG was economically damaged by Defendants' deceptive statements and claims. As a result of Defendants' deceptive statements and claims—and their failure to contribute to KCG or to support KCG with independent expenditures as they promised their donors—KCG received fewer donations from both consumers and Conservative StrikeForce and less economic support in the form of independent expenditures than it otherwise would have received.  In addition, KCG was deprived of the value of consumer donations collected by Defendants via the Solicitation Emails and Contribution Websites.

**D.    Defendants' Admission that Conservative StrikeForce Made No Independent Expenditures in Support of the Cuccinelli Campaign**

77.    On February 3, 2014, Mr. Cuccinelli and KCG confronted Defendants with the statements made in the Solicitation Emails and the lack of any significant donations by Conservative StrikeForce to KCG in comparison to the $1,297,131.26 raised by Conservative StrikeForce in the second half of 2013.

19

78.     In their response to Mr. Cuccinelli and KCG, Defendants' counsel, Mark Braden of Baker & Hostetler LLP, confirmed that Conservative Strike Force made *no* independent expenditures on behalf of Mr. Cuccinelli or his campaign.

79.     Defendants also admitted through Mr. Braden that, by the time Conservative Strike Force made the $10,000 donation to KCG on October 4, 2013, Conservative StrikeForce had *already* netted at least $10,000 from the Solicitation Emails. That is to say, Defendants had no need to make solicitations *after* October 4, 2013, to pay for the October 4, 2013 donation of $10,000 to KCG. Nevertheless, Defendants' fundraising based on the Cuccinelli campaign continued relentlessly up to and including the day of the election on November 5, 2013, even though Conservative StrikeForce made no further contributions to the Cuccinelli campaign or any independent expenditures in support of the Cuccinelli campaign.

80.     On March 6, 2014, Mr. Braden provided Mr. Cuccinelli and KCG with a document entitled "Conservative StrikeForce Cuccinelli Fundraising." The document admitted that the Conservative StrikeForce netted, after "expenses" related to fundraising and its $10,000 donation to KCG, $5,305.45. Upon information and belief, Conservative StrikeForce's profits from Cuccinelli-related fundraising substantially exceeded $5,305.45.

### Count 1 (KCG Against All Defendants)
### False Advertising and Unfair Competition Under the Lanham Act
### (15 U.S.C. § 1125(a))

81.     The allegations in the foregoing paragraphs of this Complaint are incorporated here by reference.

82.     Defendants' conduct constitutes false advertising and unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

83.     Defendants' statements and claims described above are commercial because they solicited donations from consumers in exchange for the promise of services.

84.    Defendants competed with KCG for consumer political donations.

85.    Defendants' commercial statements and claims described above are literally false or false by implication, or are misleading representations of fact.

86.    Defendants' commercial statements and claims described above had a tendency to deceive, or have deceived, a substantial segment of their intended audience.

87.    Defendants' commercial statements and claims were material because they affected consumers' decision to donate to Defendants.

88.    Defendants' commercial statements and claims described above are willful and in bad faith because Defendants made those statements and claims with the intent to deceive consumers into donating to Defendants, instead of directly to KCG, and Defendants knew that the statements were false, misleading, or deceptive at the time that they made the statements or concealed material information.

89.    Defendants' commercial statements and claims were transmitted through the internet, and thus traveled in interstate commerce.

90.    Defendants have been unjustly enriched as a direct result of their false, misleading, and deceptive email statements and claims.

91.    During 2013, KCG was engaged in commerce soliciting and receiving political contributions and its position in the marketplace was damaged by Defendants' false advertising concerning the services that Conservative StrikeForce would provide to contributors that wished to support the Cuccinelli campaign.

92.    Defendants' willful false, misleading, and deceptive statements of fact and claims injured KCG's commercial interest in receiving the benefit—whether from the contributors themselves, or through the intermediary of Conservative StrikeForce's direct contributions and

independent expenditures—of the value of contributions that consumers made to Defendants in reliance on Defendant's false, misleading, and deceptive statements.

93. Defendants' deceptive conduct toward consumers directly caused economic injury to KCG by diverting consumer contributions from KCG to Conservative StrikeForce, and additionally by denying KCG the economic benefit of direct contributions to KCG and independent expenditures in support of KCG that Defendants misleadingly and deceptively advertised would be funded with contributions made to Conservative StrikeForce in response to the Solicitation Emails.

### Count 2 (KCG Against All Defendants) Virginia False Advertising Statute (Va. Code Ann. §§ 18.2-216, 59.1-68.3)

94. The allegations in the foregoing paragraphs of this Complaint are incorporated here by reference.

95. Defendants' conduct constitutes false advertising and unfair competition in violation of the Virginia False Advertising Statute, Va. Code Ann. §§ 18.2-216, 59.1-68.3.

96. Defendants' statements and claims described above were transmitted through the internet with the intent to solicit donations from consumers in exchange for the promise of services.

97. Defendants competed with KCG for consumer political donations.

98. Defendants' statements and claims described above contained promises, assertions, and representations or statements of fact that were untrue, deceptive, or misleading.

99. Defendants' commercial statements and claims described above had a tendency to deceive, or have deceived, a substantial segment of their intended audience.

100. Defendants' commercial statements and claims were material because they affected consumers' decision to donate to Defendants.

101.   Defendants' commercial statements and claims described above are willful because Defendants made those statements and claims with the intent to deceive consumers into donating to Defendants, instead of directly to KCG, and Defendants knew that the statements were false, misleading, or deceptive at the time that they made the statements or concealed material information.

102.   Defendants have been unjustly enriched as a direct result of their false, misleading, and deceptive email statements and claims.

103.   During 2013, KCG was engaged in commerce soliciting and receiving political contributions and its position in the marketplace was damaged by Defendants' false advertising concerning the services that Conservative StrikeForce would provide to contributors that wished to support the Cuccinelli campaign.

104.   Defendants' willful false, misleading, and deceptive statements of fact and claims injured KCG's commercial interest in receiving the benefit—whether from the contributors themselves, or through the intermediary of Conservative StrikeForce's direct contributions and independent expenditures—of the value of contributions that consumers made to Defendants in reliance on Defendant's false, misleading, and deceptive statements.

105.   Defendants' deceptive conduct toward consumers directly caused economic injury to KCG by diverting consumer contributions from KCG to Conservative StrikeForce, and additionally by denying KCG the economic benefit of direct contributions to KCG and independent expenditures in support of KCG that Defendants misleadingly and deceptively advertised would be funded with contributions made to Conservative StrikeForce in response to the Solicitation Emails.

## Count 3 (KCG Against All Defendants)
## Breach of Contract

106.   The allegations in the foregoing paragraphs of this Complaint are incorporated here by reference.

107.   As described herein, Defendants solicited contributions by representing to prospective donors that their contributions would be used by Conservative StrikeForce "on behalf of Ken Cuccinelli" or to otherwise benefit his campaign for governor of Virginia.

108.   Donors manifested their acceptance of these terms by contributing funds to Conservative StrikeForce in response to the Solicitation Emails or through the Cuccinelli Fund or Virginia Victory Websites.

109.   Those donors and Defendants thus entered into agreements that were expressly intended to benefit KCG financially.

110.   KCG is a third-party beneficiary of Defendants' agreements with the donors. *See* Va. Code Ann. § 55-22.

111.   Defendants breached their obligations under their agreements with the donors to use the donors' contributions to benefit KCG.

112.   As a direct and proximate result of Conservative StrikeForce's breach, KCG has incurred actual damages in an amount equal to the total amount of the donors' contributions to Conservative StrikeForce made in response to the Solicitation Emails less the $10,000 that Conservative StrikeForce actually donated to KCG.

## Count 4 (Mr. Cuccinelli Against All Defendants)
## Unauthorized Use of Name or Picture
## (Va. Code Ann. § 8.01-40(A))

113.   The allegations in the foregoing paragraphs of this Complaint are incorporated here by reference.

114.    Virginia law protects "[a]ny person whose name, portrait, or picture is used without having first obtained the written consent of such person . . . for advertising purposes or for the purposes of trade . . . against the person, firm, or corporation so using such person's name, portrait, or picture." Va. Code Ann. § 8.01-40(A).

115.    Defendants have knowingly and repeatedly used Mr. Cuccinelli's name and picture without his consent for advertising purposes or for the purposes of trade, including in the Solicitation Emails, the Cuccinelli Fund Websites, and the Virginia Victory Websites.

116.    Their unauthorized use of Mr. Cuccinelli's name and picture was integral to the Solicitation Emails and the Cuccinelli Fund and Virginia Victory Websites.

117.    Among their unauthorized uses, Defendants used Mr. Cuccinelli's name and picture in connection with statements that, on information and belief, they knew to be false. These include the statement that "[a]ll money raised by Conservative StrikeForce's Cuccinelli Fund will be spent on behalf of Ken Cuccinelli or given as a direct contribution," and other express and implicit statements to the effect that donors' contributions would be used to aid and assist Plaintiffs' campaign.

118.    Defendants' unauthorized uses of Mr. Cuccinelli's name and picture for their commercial purposes effected a conversion of Mr. Cuccinelli's property.

### Prayer for Relief

Therefore, Mr. Cuccinelli and KCG demand judgment against Defendants awarding the following relief:

a)    Damages to KCG against Defendants, in an amount equal to three times the total amount of the donations received by Conservative StrikeForce in response to its Solicitation Emails (less $10,000) (Count 1, *see* 15 U.S.C. § 1117(a));

b) Damages to KCG against Defendants in an amount equal to the total amount of the donations received by Conservative StrikeForce in response to its Solicitation Emails (less $10,000) (Counts 2 and 3);

c) Punitive damages to KCG against Defendants (Count 3) because the breach of contract was accompanied by the intentional torts alleged in Counts 1 and 2;

d) Nominal and punitive damages to Mr. Cuccinelli against Defendants (Count 4);

e) An injunction barring Defendants from making further fundraising solicitations to persons that donated in response to the Solicitation Emails (Counts 1, 2, and 4), and requiring Defendants to disgorge to KCG and Mr. Cuccinelli the names and contact information (including email addresses) of such persons (Counts 1, 2, and 4), except for donors that can be attributed to funding the $10,000 contribution that Conservative StrikeForce made to the Cuccinelli campaign on October 4, 2013;

f) Costs of litigation, including attorney's fees; pre- and post-judgment interest at the statutory rate; and

g) All other relief to which Mr. Cuccinelli and KCG are otherwise entitled to by law.

Dated: September 8,  2014

Respectfully submitted,

Patrick M. McSweeney (VSB No. 5669)
Robert J. Cynkar (VSB No. 23349)
Christopher I. Kachouroff (VSB No. 44216)
McSWEENEY, CYNKAR &
KACHOUROFF, PLLC
13649 Office Place, Suite 101
Woodbridge, VA 22192
(703) 621-3300

*Counsel for Ken Cuccinelli for Governor, Inc.,
and Kenneth T. Cuccinelli, II*